Edward M. Katz
LAW OFFICES OF EDWARD M. KATZ
9402 Warren's Way
Wanaque, New Jersey 07465

Tel: (973) 706-7916
Fax: (973) 706-7916 (call first)
Attorney for Plaintiffs, ANSELL HEALTHCARE, INC.,
ANSELL HEALTHCARE PRODUCTS, LLC, and
VERO NATIONAL MARINE INSURANCE
COMPANY, LTD.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANSELL HEALTHCARE, INC., ANSELL HEALTHCARE PRODUCTS, LLC. and VERO NATIONAL MARINE INSURANCE COMPANY LTD.,<br><br>Plaintiffs,<br><br>vs.<br><br>MAERSK LINE, UTI UNITED STATES, INC., UTI WORLDWIDE CO. LTD. and DOES 1 through 20, inclusive<br><br>Defendants. | Case No. 07 CV 7715<br><br>**OPPOSITION TO MOTION TO QUASH SERVICE OF PROCESS AND/OR FOR ORDER OF DISMISSAL** |

Comes now Plaintiffs, ANSELL HEALTHCARE, INC., ANSELL HEALTHCARE PRODUCTS, LLC, (together, ANSELL) and VERO NATIONAL MARINE INSURANCE COMPANY, LTD., (VERO) who, in Opposition to the Motion of Defendant, UTI Worldwide, Ltd., aver as follows:

Service was effective upon actual service of the Summons and Complaint, as evidenced by the Receipt attached as Exhibit A, in accordance with local procedure pursuant to Rule 4(f)(2)(A) of the Federal Rules of Civil

Procedure.

Consultation with Thai attorneys, as evidenced in the Declaration attached as Exhibit B, has confirmed mail service is permitted in Thailand absent personal service which, in the present case, is prohibited by Rule 4(h)(2). Federal Rule 4 is clear there are options available to plaintiffs in serving foreign nationals who, as in this case, contract with American corporations to perform services in the United States and then seek to avoid U.S. jurisdiction.

Note that UTi Worldwide was also served through its U.S. office (See Exhibit C attached showing return receipt and UTi letterhead). There is no question of actual notice; UTi Worldwide, as well as its U.S. agent, signed receipts for the pleadings served and UTI has appointed counsel to appear on its behalf. This is not a question of default or lack of actual notice. UTi was aware of the loss as early as October, 2006, and was provided claim documents in April, 2007.

Defendant UTi notes, correctly, that Thailand is not signatory to the Hague Convention the service procedures for which are described in Rule 4 of the Federal Rules of Civil Procedure. Thus, plaintiffs may, as provided by the Federal Rules, act in accordance with local law save for personal service which is prohibited. It is the opinion of counsel at a Bangkok, Thailand, law firm established in 1893 that Thai law does allow for mail service upon court order which is granted when personal

service is unobtainable. Here, personal service is prohibited by the Federal Rules of Civil Procedure so local law would permit mail service. Application would not be made to a Thai Court because no case is pending therein. The important precept is that mail service is acceptable in Thailand and where, as here, there is no question that actual service was made, that service is valid.

Moving party cites one case as its sole support. That case is unpublished and marked by Westlaw "Cite as: Not Reported in F. Supp2d" although Moving Party reports the authority as an S.D.NY case without noting the Westlaw disclaimer, perhaps hoping it will be accepted as controlling authority. It is noteworthy that even that case [Import-Export Bank of the United States v. Asia Pulp & Paper, 2005 WL 123755] while dealing with similar issues, was decided **against** defendants seeking to have the service rendered void.

<u>Import-Export Bank of the United States</u> explored the service rules in Indonesia, a country which, like Thailand, has not ratified the Hague Convention. Although the tenets of Rule 4 were mentioned, and apparently cited by moving party here for that purpose, the Court concluded, in view of Plaintiff's proof of actual service, as was accomplished in the present case, and despite the fact service was not mailed by the Clerk of Court, and even though service was:

> [t]echnically in violation of Indonesian service requirements, any offense to

3

OPPOSITION TO MOTION TO QUASH

> that country's sovereignty is minimal.
> Such service is not disruptive, and
> any party that engages in international
> transactions must anticipate the use of
> a generally accepted form of service . . . .

The same logic can and should be applied here.

As for UTI's argument that the bill of lading can define when "suit is filed," that is a question for this Honorable Court. It is to be noted, however, that case law is clear that for claims arising from ocean carriage between the United States and any foreign nation, the Carriage of Goods by Sea Act (COGSA) 46 U.S.C. Sec. 1300 et seq. applies. Even the cases cited by moving party here agree to that tenet. One even cites COGSA, at Section 1303(6), for the rule that suit be brought within one year "and the courts have construed "brought" to mean libel filed. J. Aron v. The ASKVIN, et al., 267 F.2d 276 (2d Cir. 1959).

The Court is J. Aron, supra, as well as the other two cases cited by moving party, had to look beyond COGSA which did not apply because either the goods had already been discharged from the vessel (J. Aron, supra) or the carriage was between ports within the United States and not between the United States and a foreign port so the Harter Act applies, 46 U.S.C. Sec. 190 et seq.

In American International Ins. Co of Puerto Rico v. The M/V SAN JUAN, 730 F.Supp. 1190 (D. Puerto Rico 1990) the carriage was between New Jersey and Puerto Rico.

1   Similarly, in <u>Ralston Purina Co. v. Barge Juneau and Gulf
2   Caribbean Marine Lines, Inc.</u> the carriage was between
3   Texas and Puerto Rico so, again, the Harter Act rather
4   than COGSA applied. Although the relevant bills of
5   lading incorporated some COGSA terms along with the non-
6   COGSA service requirement, moving party here cleverly
7   tries to imply that a COGSA carriage is subject to the
8   same contractual limitation. As the cases themselves
9   make clear, however, nothing could be further from the
10  truth. Where, as here, there is an international
11  carriage from a foreign port to the United States and the
12  damage occurred, indeed, was even reported to plaintiff,
13  while the cargo was still aboard the vessel and in
14  transit, there can be no application of the Harter Act.
15      COGSA applies of its own force as a matter of U.S.
16  law and filing the "libel" within one year, as was
17  accomplished here, is all that COGSA requires.
18      In sum, service was carried out in fact and under
19  conditions acceptable to the Thai Courts as permitted
20  under Rule 4(f)(2)(A) of the Federal Rules of Civil
21  Procedure and, thus, is valid. No time bar need
22  considered nor, in any event, is one available under
23  COGSA, the applicable law.
24
25      UTI Worldwide, which has already retained local
26  counsel, should be Ordered to Answer.
27
28  **HARD COPIES OF EXHIBITS ARE BEING FORWARDED BY MAIL AS COUNSEL DOES NOT HAVE ACCESS TO A SCANNER**

Dated: New York, NY December 10, 2007

By: s/Edward M. Katz
Attorney for Plaintiffs,
ANSELL HEALTHCARE, INC.,
ANSELL HEALTHCARE PRODUCTS, LLC, and VERO NATIONAL MARINE INSURANCE COMPANY, LTD.

OPPOSITION TO MOTION TO QUASH

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically this 10th day of December 2007. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system: Hyman, Spector & Mars, LLP., 150 W. Flagler Street, Miami, FL 3130 and Kaplan, Van Ohlen & Massamillo, 555 Fifth Avenue, 15th floor, New York, NY 10017. Parties may access this filing through the Court's system.

By: /s/Edward M. Katz

OPPOSITION TO MOTION TO QUASH