```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ANSELL HEALTHCARE, INC. et al.,     :
                                    :
                    Plaintiffs,     :
                                    :    07 Civ. 7715 (VM)
          -against-                 :
                                    :    DECISION AND ORDER
MAERSK LINE et al.,                 :
                                    :
                    Defendants.     :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Ansell Healthcare, Inc. ("Ansell"), Ansell Healthcare Products, LLC, ("Ansell Products") (collectively, "Ansell Plaintiffs"), and Vero National Marine Insurance Company Ltd. (collectively, "Plaintiffs"), brought an action against UTi United States, Inc. ("UTi United States"), UTi Worldwide Co. Ltd. ("UTi Thailand") (collectively, "UTi Defendants"), Maersk Line ("Maersk"), and other unnamed defendants (collectively, "Defendants"). Plaintiffs assert that Defendants are liable for damage to their property caused during the voyage of the goods from Thailand to the United States under breach of maritime contract and negligence theories. UTi Thailand moved to quash service of process and/or for an order of dismissal.[1] For the reasons stated below, UTi Thailand's motion is GRANTED in part and DENIED in part.

---

[1] Although UTi Thailand's motion did not specifically enumerate the Federal Rules of Civil Procedure under which it is moving for dismissal, the Court presumes that UTi Thailand's motion is made pursuant to Rules 12(b)(5) ("Rule 12(b)(5)") and 12(b)(6) ("Rule 12(b)(6)").

## I. BACKGROUND[2]

UTi United States and UTi Thailand issued bill of lading number 5661017549 (the "Bill") as the contract of carriage for Ansell Plaintiffs' goods from Bangkok, Thailand to the United States. Plaintiffs assert that, in regard to the Bill, UTi Defendants were acting as agents or masters for Maersk. During the loading aboard the M/V Mette Maresk for carriage as agreed and contracted, the Ansell Plaintiffs' goods, which consisted of 936 cartons of sterile rubber condoms (the "Plaintiffs' Goods"), were damaged by exposure to water in the bilges of the vessel, rendering the Plaintiffs' Goods unfit for their intended use. The Plaintiffs' Goods were subsequently destroyed.

Plaintiffs served process for the instant action on UTi United States on or about September 6, 2007, and, at that time, Plaintiffs attempted to serve process on UTi Thailand through UTi United States. UTi United States, however, was not authorized to accept service behalf of UTi Thailand, and thus, it refused to accept service on behalf of UTi Thailand. Plaintiffs then attempted to serve process on UTi Thailand

---

[2] Unless otherwise noted, the following factual summary is derived from Plaintiffs' Complaint, dated August 27, 2007 (the "Complaint"); UTi Thailand's Memorandum Supporting Its Motion to Quash Service of Process And/Or for Order of Dismissal, dated October 31, 2007 ("UTi Thailand's Mem."); Plaintiffs' Opposition Memorandum, dated December 10, 2007 ("Pls.' Opp."); and UTi Thailand's Reply Memorandum in Further Support of Its Motion to Quash Service of Process And/Or for Order of Dismissal, dated January 9, 2008 ("UTi Thailand's Reply Mem."). Unless specifically referenced, no further citation to these sources will be made.

through registered/certified mail, which was sent directly from Plaintiffs' counsel, not the Clerk of Court.

## II. DISCUSSION

A. SUFFICIENCY OF SERVICE OF PROCESS ON UTi THAILAND

UTi Thailand asserts that Plaintiffs' attempt to serve process on it was defective under either of the applicable Federal Rules of Civil Procedure 4(f)(2)(c)(ii) or 4(f)(2)(A). The Court agrees.

1.  Rule 4(f)(2)(C)(ii)

Rule 4(f)(2)(C)(ii) provides that, "unless prohibited by the foreign country's law," a party may effect service outside the United States by "using any form of mail that the <u>clerk addresses and sends</u> to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(2)(C)(ii) (emphasis added).[3] Courts have found service of process under Rule 4(f)(2)(C)(ii) defective when the service is effectuated through the mail by someone other than the Clerk of Court. See, e.g., <u>Export-Import Bank of the United States v. Asia Pulp & Paper Co.</u>, No. 03 Civ. 8554, 2005 WL 1123755, at *2 (S.D.N.Y. May 11, 2005) (finding that the plaintiff's attempted service by mail on defendants in Indonesia was

---

[3] This rule pertains only to instances where "there is no internationally agreed means [of service], or if [the] international agreement allows but does not specify other means [of service]." Fed. R. Civ. P. 4(f)(2). Neither Plaintiffs nor Defendants dispute that there is no internationally agreed means of service between the United States and Thailand.

3

defective under Rule 4(f)(2)(C)(ii) because service was "initiated by the plaintiff rather than by the Clerk of Court," but valid under Rule 4(f)(3)).

Plaintiffs, in the instant matter, did not comply with Rule 4(f)(2)(C)(ii) because Plaintiffs' counsel, not the Clerk of Court, initiated service upon UTi Thailand through registered/certified mail. Accordingly, Plaintiffs' service of process upon UTi Thailand was defective under Rule 4(f)(2)(C)(ii).

2. <u>Rule 4(f)(2)(A)</u>

Rule 4(f)(2)(A) provides that a party may effect service on an individual in a foreign country by a method reasonably calculated to give notice "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). Plaintiffs, relying on the legal opinion of Michael Ramirez ("Ramirez"), an attorney in Bangkok, Thailand, assert that Thai law does allow for service of process by mail upon court order, which is generally granted when personal service is unobtainable. Plaintiffs further assert that because personal service is prohibited in the instant action by Federal Rule of Civil Procedure 4(h)(2), Thai law would permit mail service.

Ramirez's opinion, however, belies Plaintiffs' reliance on Rule 4(f)(2)(A). Even assuming that Thai law permits

4

service of process by mail as stated by Ramirez, Plaintiffs have not complied with this rule because they did not obtain a Court order authorizing them to effect service of process on UTi Thailand through the mail. Plaintiffs have not asserted that simple service by mail is acceptable under Thai law. Therefore Plaintiffs' service of process upon UTi Thailand did not comport with Rule 4(f)(2)(A).

Plaintiffs have not asserted that their purported service of process upon UTi Thailand was valid under any other Federal Rule of Civil Procedure. UTi Thailand has no office or agent in the United States, and it is a separate legal entity from UTi United States, thus invalidating Plaintiffs' attempt to serve UTi Thailand through UTi United States. Accordingly, Plaintiffs' service upon UTi Thailand was defective and must be quashed.

After balancing the equitable concerns, however, the Court will not dismiss the Complaint pursuant to Rule 12(b)(5). UTi Thailand has not established sufficient evidence demonstrating that Plaintiffs' defective service was the result of a wanton or willful disregard for the laws of the United States or Thailand, or that Plaintiffs had gained a significant and unfair advantage in the matter by insufficiently serving process. See, e.g., Morales v. Robert Fleming, Inc., No. 89 Civ. 2106, 1989 WL 303516, at *3

(S.D.N.Y. Oct. 30, 1989) (quashing service of process but denying the motion to dismiss the complaint because the balance of equities favored allowing plaintiff to re-attempt serving process); <u>Beatie and Osborn LLP v. Patriot Scientific Corp.</u>, 431 F. Supp. 2d 367, 385 n.11 (S.D.N.Y. 2006) (stating that dismissal based on insufficiency of service of process is not mandatory and that courts have "broad discretion to dismiss the action or retain the case but quash the service") (citations and quotation marks omitted). Also, Plaintiffs have previously located and attempted to serve UTi Thailand, and if Plaintiffs initiate service by mail through the Clerk of Court, they have a reasonable prospect for effecting proper service upon UTi Thailand in the future. See <u>Morales</u>, 1989 WL 303516, at *3.

Accordingly, although Plaintiffs failed to properly serve UTi Thailand, the Court will not dismiss the Complaint pursuant to Rule 12(b)(5).

B.  <u>CONTRACTUAL AND STATUTORY LIMITATIONS PERIOD</u>

UTi Thailand asserts that Plaintiffs are barred by the Bill's terms and conditions from attempting to cure service, and thus, the Court should dismiss UTi Thailand from the instant action pursuant to Rule 12(b)(6).

1.  <u>Standard of Review for Rule 12(b)(6) Motions</u>

In considering a motion to dismiss pursuant to Rule

12(b)(6), a court construes the complaint broadly, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citation and quotation marks omitted). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In addition to the Complaint the Court may also consider the Bill and its terms and conditions when ruling on UTi Thailand's motion to dismiss because it is integral to the Complaint. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (stating that the court, when ruling on a Rule 12(b)(6) motion, may consider documents upon which the complaint solely relies and are integral to the complaint) (citations omitted).

2. The Carriage of Goods at Sea Act

The Carriage of Goods at Sea Act, 46 U.S.C. § 30701 note ("COGSA") applies "to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." Id. § 13. COGSA does not apply of its own force to contracts

for the carriage of goods by sea between United States domestic ports. See id. (stating that COGSA does not apply when goods are shipped by sea "between any port of the United States or its possessions, and any other port of the United States or its possessions"). "[U]nder every contract of carriage of goods by sea, the carrier in relation to the loading, handling, stowage, carriage, custody, care, and discharge of such goods, shall be subject to the responsibilities and liabilities and entitled to the rights and immunities set forth in [COGSA § 3]." Id. § 2. COGSA § 3 provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered ...." Id. § 3(6).

Courts have found provisions in bills of lading that are in conflict with COGSA to be invalid. See Pan Am. World Airways, Inc. v. California Stevedore and Ballast Co., 559 F.2d 1173, 1175 n.3 (9th Cir. 1977) (finding that where the parties fully incorporated COGSA into their agreement, defendants could not rely on a limitation of liability clause in the bill of lading that conflicted with COGSA); see also Watermill Exp., Inc. v. MV Ponce, 506 F. Supp. 612, 615 (S.D.N.Y. 1981) (finding that because the parties fully

incorporated specific provisions COGSA into their agreement, any provision in the bill of lading that conflicts with any relevant COGSA provision is void).

    3.    <u>Application to Plaintiffs' Claims Against UTi Thailand</u>

UTi Thailand asserts that the Bill forecloses Plaintiffs' ability to bring suit against UTi Thailand for the damage to Plaintiffs' Goods. UTi Thailand asserts that, pursuant to the Bill, it is subject to liability for any damage to the Plaintiffs' Goods only if Plaintiffs initiate suit "within one year after delivery of the [Plaintiffs' Goods] ... or the date when the [Plaintiffs' Goods] should have been delivered." (The Bill ¶ 33, attached as Ex. A to UTi Thailand's Mem.) UTi Thailand further asserts that, pursuant to the Bill, suit is not deemed to have been initiated "unless jurisdiction shall have been obtained over the Carrier and/or the Vessel by service of process or by an agreement to appear" (the "Jurisdiction Provision"), and that courts have upheld the enfoceability of such provisions. <u>Id.</u> UTi Thailand thus concludes that Plaintiffs' suit should be dismissed as against it because Plaintiffs did not effect service of process within one year from the date Plaintiffs' Goods were delivered.[4] The

---

[4] Though the date the Plaintiffs' Goods were delivered is not clear from the record, the Court will assume for the purposes of the instant motion that Plaintiffs have not effected valid service of process upon UTi Thailand within one year from delivery of Plaintiffs' Goods.

Court disagrees.

In the instant matter, COGSA applies of its own force, which neither Plaintiffs nor Defendants dispute, because Plaintiffs and Defendants contracted to ship the Plaintiffs' Goods by sea from Bangkok, Thailand, a port that is not within the United States or its possessions, to the United States. See COGSA § 13. Courts interpreting COGSA have long found that filing the complaint initiates the admiralty action, and that service of process may be effectuated more than one year after delivery of the goods. See Ruffner, McDowell & Burch, Inc. v. S.S. Costa Rica, 377 F.2d 709, 710 (2d Cir. 1967) ("For purposes of [COGSA § 3(6)], 'suit is brought' by the filing of a libel rather than by personal service."); ORE S.S. Corp. v. D/S A/S Hassel, 137 F.2d 326, 329 (2d Cir. 1943) (stating that "[i]t is too well settled for discussion ... that the filing of the libel marks the institution of an admiralty suit," and finding that even though plaintiff served process more than one year after delivery, its suit was not barred by COGSA).

Although the date on which the Plaintiffs' Goods were delivered is unclear from the record, it is obvious nonetheless that Plaintiffs' commencement of the instant action pursuant to COGSA § 3(6) was timely. The Bill is dated September 4, 2006 in Bangkok, Thailand (the "Voyage's

Commencement Date"). Plaintiffs filed the instant action on August 29, 2007, which is less than one year after the Voyage's Commencement Date, and because the delivery date is necessarily subsequent to the Voyage's Commencement Date, the Complaint must have been filed within the one-year period following the delivery of Plaintiffs' Goods. Thus, Plaintiffs — in accordance with COGSA § 3(6) — brought their suit against UTi Thailand within one year from the date Plaintiffs' Goods were delivered.

Further, the Court is not persuaded that, under the circumstances of the instant case, the Jurisdiction Provision modifies the parties' rights and responsibilities under COGSA § 3(6). The cases UTi Thailand cites for the proposition that courts have enforced provisions similar to the Jurisdiction Provision were rendered under circumstances distinguishable from those of the instant action. For example, UTi Thailand relies on Ralston Purina Co. v. Barge Juneau and Gulf Caribbean Marine Lines, Inc., where the parties entered into a contract to ship goods domestically between Texas and Puerto Rico, but despite COGSA not applying of its own force to the transaction, the parties incorporated COGSA "except as may be otherwise specifically provided [in their contract]." 619 F.2d 374, 374-76 (5th Cir. 1980). The parties' agreement included a provision nearly identical to the Jurisdiction

11

Provision. The plaintiff filed its complaint within one year of delivery of the goods but did not effect service of process until more than a year after delivery. The Ralston Court found that while the "statute of limitations in [COGSA § 3(6)], as it has been judicially construed, would have been met," the parties' clear intent was "to be governed by most but not all of the provisions of COGSA," and the Ralston Court affirmed the grant of summary judgment on behalf of the defendant. Ralston, 619 F.2d at 375-76. The other cases UTi Thailand relies upon are equally distinguishable. See, e.g., J. Aron & Co. v. Askvin, 267 F.2d 276, 277 (2d Cir. 1959) (finding that COGSA did not apply of its own force because the goods were already discharged from the ship and that the parties incorporated COGSA "except as otherwise specifically provided" in their agreement); American Int'l Ins. Co. of Puerto Rico v. M/V San Juan, 730 F. Supp. 1190, 1192 (D.P.R. 1990) (finding that, where COGSA did not apply in a domestic shipping transaction but was incorporated pursuant to the contract, a provision in the parties' agreement similar to the Jurisdiction Provision was reasonable under the circumstances because the general law governing domestic shipping contracts does not contain a specific limitation period). In the instant action, COGSA applies of its own force, and its provisions cannot be modified by the Bill's

terms and conditions. Accordingly, the Bills' Jurisdiction Provision is invalid under these circumstances because it conflicts with COGSA § 3(6).

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 4) of defendant UTi Worldwide Co. Ltd. ("UTi Thailand") to quash service of process is GRANTED; and it is further

**ORDERED** that the motion (Docket No. 4) of UTi Thailand to dismiss the complaint herein pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) is DENIED; and it is finally

**ORDERED** that plaintiffs Ansell Healthcare, Inc., Ansell Healthcare Products, LLC, and Vero National Marine Insurance Company Ltd. have leave to effect proper service upon UTi Thailand within twenty days from the date of this order.

**SO ORDERED.**

Dated:   New York, New York
         4 April 2008

                                          VICTOR MARRERO
                                             U.S.D.J.